LEON M. PECK AND LILLIAN L. WIGGINS v. CLARA E.
COOK.

*Deed—Mental competency of grantor—Setting aside conveyance—
Repayment of purchase price.*

The decree setting aside a deed, executed to defendant by com-
plainants' father, on the ground of his mental incompetency,
without requiring as a condition precedent the repayment of
the purchase price to defendant's husband, who claimed to
have paid the same, is affirmed. Only questions of fact are
involved.

Appeal from Kent. (Grove, J.) Argued January 12,
1893. Decided March 10, 1893.

Bill to set aside a deed on the ground of the mental
incompetency of the grantor. Defendant appeals. Decree
affirmed. The facts are stated in the opinion.

*Philip Padgham,* for complainants.

*Earle & Hyde,* for defendant.

MONTGOMERY, J. The complainants are the heirs at
law of Franklin Peck, deceased, and file this bill of com-
plaint against the defendant to set aside a deed made by
Franklin Peck to the defendant on the 20th day of September,
1890, about 60 days prior to his decease. The bill alleges
that the deceased was at the time of weak mind, incom-
petent to do business of the character involved, and that
one Warren J. Cook, the husband of the defendant, on
behalf of his wife, knowingly obtained the said pretended
deed of real estate for the purpose of cheating and defraud-
ing said Franklin Peck and his heirs out of said real estate
mentioned.

The defendant answered, denying the material allegations in the bill, and alleging that—

" The business transactions of said Franklin Peck sometimes required more means than he had at hand, and that this defendant frequently loaned the said Franklin Peck sums of money, and took his · promissory notes therefor; that, in addition to the loaning of money, the said Warren J. Cook had not, at the time of making the said warranty deed to the defendant, ever received any money whatever from the said Franklin Peck for services rendered as his business agent and as conveyancer for him, except small sums, aggregating not to exceed $20; that, at the time of the purchase of said house and lot in the city of Grand Rapids, this defendant paid towards the purchase price of said house and lot the sum of $800, represented in part by promissory notes held by her or her said husband, and in part by money then paid by her to said Franklin Peck; that it was understood and agreed between this defendant and said Franklin Peck that the legal title to said property should be taken in his name, and that this defendant should have property or other valuable things, either the real estate or bank stock, in payment of the said sum of $800 so paid by this defendant, and also in payment of the services of the said Warren J. Cook, as aforesaid."

The answer further sets up—

" That upon the arrival of the said Cook at the house of the said Franklin Peck, on the 13th of September, 1890, as aforesaid, almost the first question which the said Franklin Peck asked him was whether he had brought with him the warranty deed, drawn up by him in May last, for the property in the city of Grand Rapids; that said Warren J. Cook replied that he had not brought said deed, for the reason that said Peck, in his letter requesting said Cook to come to him, had not requested him to bring it; that the said Franklin Peck thereupon directed said Warren J. Cook to bring said deed to him the next time he came; that on the 20th day of September, 1890, when Warren J. Cook went to the house of said Chapple to see said Franklin Peck, he took with him the said warranty deed for the property in question in this suit; that said Franklin Peck inquired of said Warren J. Cook if he had brought said deed with him, and said Warren J. Cook replied that he had, and produced the said deed, which was again inspect-

ed by said Peck, who requested the said Warren J. Cook to change the date thereof from the 11th of May, when the said deed was drawn, to the 20th of September, and, by the consent of said Peck, the grantee's name, as written therein, was changed from the said Warren J. Cook to this defendant, Warren J. Cook then explaining to said Peck that the money which he had loaned to him was the property of this defendant; that said Peck then and there assented to the said change, and afterwards, but on the same day, executed the said deed, and thereupon said Warren J. Cook delivered up to said Franklin Peck his promissory notes, held by this defendant and said Warren J. Cook, amounting to $950, and interest."

It will be seen that that the answer apparently claims that $1,750, as a whole, was paid as the purchase price of this property. This, however, was not the theory of the defense at the trial, and, standing alone, we do not regard it as a very significant fact. The theory of the defense was—and the claim was supported solely by the testimony of Warren J. Cook—that, prior to the purchase of the house and lot, some talk had been had between him and Franklin Peck about the Cooks purchasing a house and lot in the city of Grand Rapids, and making a home for Peck during the winter months; that the house and lot was looked up; that Peck came on to Grand Rapids, decided to make the purchase, and paid for the house and lot in certificates of deposits which were in his (Peck's) own name. Cook testifies that, after the purchase was consummated, he asked Peck whether he desired to carry out the arrangement as they had first talked, and that Peck replied, in substance, that, if Cook desired to pay half of the purchase price, they would call the rent $10 a month, and that Cook could pay $5 a month for his part. Cook replied to this that he did not care to rent a house, and, upon Peck's assuring him that he could pay the rent in professional services, he assented to the arrangement, and testifies that he thereupon delivered up

to Peck one note of $300 which he held against him, another note of $200, and $300 in cash, and took Peck's note or due-bill for $800; that, on the occasion when the deed of September 20 was signed and delivered, he delivered to him the $800 note and another note of $150, which he claimed to hold, which Peck had given him. He testifies that at this time he prepared a life-lease of a portion of the house to deliver to Peck, but that, as his wife's signature was desired, it was not signed, and it does not appear that it was ever afterwards delivered or tendered.

On the 4th of October, deceased wrote a letter to Cook, in which he stated:

"Did not understand what papers you made relating to your dwelling when at my house last. Be sure and bring it with you, if any. Come without delay, and do not fail to bring the papers, if any."

It appears that, at the time this deed was drawn, it was witnessed by one Sprik, who on the same day secured a deed to himself from Peck, which is alleged to be without consideration; but the transaction of preparing the deed for signature, and the drafting of the life-lease, occurred while Sprik was out of the room, and the testimony of Warren J. Cook stands wholly uncorroborated upon every question except the bare fact of signing the deed. Cook also testified that the paper which Peck signed on the 20th of September had been drafted in May, and that the date was changed from the 11th of May to the 20th of September. It appeared, however, by examination, that the date of May 11 had not been written in the paper, but, on the contrary, the only change was from the 13th of September to the 20th of September; and, furthermore, it appeared by incontrovertible testimony that the blank upon which the paper was written was not printed until after May, 1890.

It might be stated that, on the petition for rehearing, the witness Cook produced an unsigned deed, bearing date May 10, 1890, which he claimed was the deed referred to in the answer. It appears that the 11th of May was Sunday. But it is remarkable that he should have been able to state in the answer, which was prepared under his direction, and in his sworn testimony, the precise date which this deed bore, and to adhere to it until the close of the trial, with no apparent uncertainty as to the fact.

Two questions are presented upon this record:

1. Whether the deceased, Franklin Peck, was at the time of executing this deed mentally competent to understand the nature of the transaction. This was purely a question of fact, but the circumstances under which the deed was drawn are significant, and the testimony, which it would profit nobody to quote at length, is completely overwhelming that his mental condition was not such as would justify any court in sustaining this transaction. The circuit judge was of this opinion, and was so clearly right that we deem it not worth while to set out our reasons at length for concurring in his views.

2. The only other question remaining is whether, as a condition of setting aside the conveyance, the alleged consideration price should be repaid to Warren J. Cook. The case is peculiar. But for the fraudulent and unjustifiable conduct of Cook in procuring this deed to be made, he would have been called upon to make proof of his claim before commissioners on claims or the probate court, and in that proceeding he himself would not have been a competent witness. In this case, by his own testimony, he is the party in interest. According to his testimony, the only notes which were transferred were notes held by him, and for money which he personally claimed to have advanced to the deceased. His testimony is not corroborated by any witness who knows the facts. The circuit

judge, who heard his testimony, evidently discredited his evidence. We do not, in view of the many inconsistencies in his statements, feel justified in substituting our judgment for that of the circuit judge, who had the opportunity of seeing the witness and noting his appearance upon the stand.

The decree will be affirmed, with costs, but without prejudice to any proceedings which the defendant or her husband may see fit to take in the probate court or before commissioners.

The other Justices concurred.